IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

GREGORY WOODEN,

      Plaintiff,

v.                                CASE NO. 3:16-cv-446-MCR-GRJ

CLYDE BARRINGER, et al.,

      Defendants.

_____/

## O R D E R

This matter is before the Court on ECF No. 50, Plaintiff's Motion for
Spoliation Sanctions. Defendant Barringer has responded, (ECF No. 52),
and the matter is therefore ripe for review. For the following reasons,
Plaintiff's motion is denied.

## I.  INTRODUCTION

This is a straightforward excessive force and deliberate indifference
case. Relevant to the instant motion, Plaintiff claims Defendant Barringer, a
correctional officer employed by the Alachua County Sheriff's Office
("ACSO"), used excessive force against Plaintiff on February 11, 2016,
while Plaintiff was incarcerated at the Alachua County Jail ("ACJ"). Plaintiff

brought his claims against Defendant Barringer in his individual capacity.

## II. BACKGROUND

Plaintiff filed an informal grievance on February 12, 2016, reporting the use-of-force, in which he requested that his disciplinary report be dropped and that Officer Barringer be educated on officer rules. (ECF No. 50 at 29–31, Ex. A.) Plaintiff's classification officer, Ms. Brow, responded to the informal grievance on February 26, 2016, informing Plaintiff that he must file a formal grievance about a use-of-force. *(Id.)* Accordingly, Plaintiff filed a formal grievance on March 5, 2016, again addressing the use-of-force, in which he requested that the C-dorm pod 3 ("pod") cameras be reviewed. (*Id.* at 33, Ex. B.) Captain Corey Warren denied the grievance on March 16, 2016. (*Id.*)

Plaintiff then filed a notice of intent to initiate litigation regarding the incident with Alachua County Sheriff Sadie Darnell on April 12, 2016. (*Id.* at 35–38, Ex. C.) In the notice Plaintiff discussed the use-of-force, noting that Nurse Hewitt examined Plaintiff in medical following the use-of-force.

On April 25, 2016, Plaintiff's wife also filed a notice of intent to initiate litigation regarding the incident with Sheriff Darnell, the Honorable C. Wegant (General Counsel), the Florida Department of Financial Services,

Captain S. Maynard (Internal Affairs), and City of Alachua Mayor Gib

Coerper. (*Id.* at 40–43, Ex. D.) Plaintiff says his wife spoke to Sergeant

Duncan via telephone and requested a copy of the video from the incident.

(*Id.* at 4.) Plaintiff claims Sergeant Duncan told Plaintiff's wife that no video

was available. (*Id.*) Captain Certain later contacted Plaintiff's wife and

allegedly told her that the video was available, he would review the video,

and then get back in touch with her. (*Id.* at 4–5.) Captain Certain, however,

never followed-up with Plaintiff's wife. (*Id.* at 5.)

Plaintiff initiated this case pursuant to the mailbox rule on December

21, 2016. (ECF No. 1.) The Court issued summons to Defendant Barringer

on January 17, 2017. (ECF Nos. 6–7.) Defendant Barringer was served

with the summons and a copy of the Complaint on March 3, 2017. (ECF

No. 8.)

After this case proceeded to the discovery stage, Plaintiff sent

Defendant Barringer his first requests for production on May 11, 2017.

(ECF No. 50 at 45–47, Ex. E.) In the request for production Plaintiff

requested the video recordings from medical and from the pod where the

incident took place on February 11, 2016. Defendant Barringer responded

that no video footage existed from medical. Defendant Barringer did,

however, produce three video recordings from three different angles that captured the incident in the pod on February 11, 2016. (*Id.* at 5.)

Plaintiff sent Defendant Barringer his second requests for production on June 8, 2017. (*Id.* at 49–56, Ex. F.) Plaintiff requested documentation regarding the placement of video cameras in medical, the hallways leading from the pod to medical, and the pod. Defendant Barringer objected that the request was not relevant to any party's claim or defense.

Then on July 28, 2017, Plaintiff send Defendant Barringer his second set of interrogatories. (*Id.* at 58–74, Ex. G.) One interrogatory asked whether any recordings or photographs show Plaintiff's face, neck, and/or torso regions after the use-of-force. Defendant Barringer responded that the only video recordings that show Plaintiff's face, neck, and/or torso after the incident were already produced. Another interrogatory asked whether the route Defendant Barringer and Plaintiff took from the pod to medical following the use-of-force had operational video surveillance cameras, as well as whether medical had operational video surveillance cameras. Defendant Barringer responded that both the route and medical had operational video surveillance cameras.

Plaintiff then requested in his third request for production the video

recordings from the route taken to medical following the incident and from medical during his post-use-of-force examination. (*Id.* at 76–80, Ex. H.) Defendant Barringer responded that other than the three video recordings from the pod—which were already produced to Plaintiff—there were no additional responsive documents. Defendant Barringer explained that while the ACJ saves videos capturing use-of-force incidents upon a use-of-force allegation, absent such an allegation the video footage is only retained for 30 days and then the video overwrites itself.

Plaintiff has now filed the instant motion for sanctions. Plaintiff claims the three video recordings that Defendant Barringer produced are incomplete and have been manipulated to not show the use-of-force. For example, Plaintiff claims one of the videos "fails to show the prolonged choking of Plaintiff by Defendant Barringer, or Defendant Barringer's falling down, or the inmates cleaning up the blood from Plaintiff's wounds." (*Id.* at 5.)

Plaintiff also says Defendant Barringer acted in bad faith to destroy the video recordings from the hallways and medical by not taking the requisite actions to preserve the evidence, despite having a duty to do so. (*Id.* at 18–20.) Plaintiff claims he "suffered extensive wounds to his eye-,

eyebrow, and forehead-area with blood streaming down his face and onto his torso," that he had "gratuitous amounts of blood all over [his] face, neck, and torso," and that Defendant Barringer dragged Plaintiff away from the area where he was assaulted. (*Id.* at 15.) Plaintiff says he is prejudiced by Defendant Barringer's failure to preserve these video recordings because the videos would have shown Plaintiff's injuries, Defendant Barringer's demeanor after the use-of-force, and the "great disparity between the sizes and weight of Plaintiff compared to that of Defendant Barringer." (*Id.* at 16.) Plaintiff further alleges that although Nurse Hewitt's examination notes only disclose that Plaintiff sustained minor wounds, the video recordings would have demonstrated Plaintiff's "extensive injuries." (*Id.* at 17.)

Accordingly, Plaintiff seeks spoliation sanctions in the form of a default judgment against Defendant Barringer as to liability, and referral to arbitration to determine the amount of damages to be awarded to Plaintiff.

Defendant Barringer contends that Plaintiff's motion should be denied. (ECF No. 52.) Defendant Barringer argues Plaintiff's allegations that the three produced videos are incomplete and manipulated are baseless, conclusory, and false. Additionally, Defendant Barringer argues

that Plaintiff's allegations that Defendant Barringer destroyed video recordings of him escorting Plaintiff to medical and of Plaintiff in medical are baseless, conclusory, and false. Defendant Barringer further says Plaintiff has failed to establish that Defendant Barringer acted in bad faith. Defendant Barringer has filed evidentiary materials in support of his response, including a copy of the three videos (ECF Nos. 52-1, 53), Plaintiff's inmate medical file (ECF No. 52-2), and a sworn affidavit from Defendant Barringer (ECF No. 52-4).

## III. DISCUSSION

Spoliation is the "intentional destruction of evidence or the significant and meaningful alteration of a document or instrument." *Southeastern Mech. Servs., Inc. v. Brody*, 657 F. Supp. 2d 1293, 1299 (M.D. Fla. 2009) (citing *Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*, 341 F.3d 1292, 1308 (11th Cir. 2003)). A district court's power to sanction a party for spoliation of evidence derives from two sources: (1) the Federal Rules of Civil Procedure; and (2) the court's inherent power to control the judicial process and litigation. *See* Fed. R. Civ. P. 37(e); *Flury v. Daimier Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005) (citations omitted) (district courts have inherent power to impose sanctions for discovery abuses in order to

"prevent unfair prejudice to litigants and to ensure the integrity of the discovery process"). These principles are applicable to spoliation of documents but are not applicable to a claim of spoliation involving electronically stored information. ("ESI.)

Rather, when dealing with ESI Federal Rule of Civil Procedure 37(e) now governs a district court's power to sanction a party for spoliation of electronically stored information ("ESI"). Rule 37(e), which was amended effective December 1, 2015, "authorizes and specifies measures a court may employ if information that should have been preserved is lost, and specifies the findings necessary to justify these measures." Fed. R. Civ. P. 37 advisory committee's note (2015). The new version of Rule 37(e) "forecloses reliance on inherent authority . . . to determine when certain measures should be used." *Id.* The current version of Rule 37(e), therefore, significantly limits a court's discretion to impose sanctions for ESI spoliations. Accordingly, this Court must first determine whether the ACSO's surveillance videos constitute ESI.[1]

The Federal Rules of Civil Procedure do not explicitly define ESI.

---

[1] Neither party addresses whether the video recordings constitute ESI governed by Rule 37(e).

Instead, the advisory committee notes discuss the breadth of the term ESI,

which covers all current types of computer-based information not in

tangible form. *See* Fed. R. Civ. P. 34 advisory committee's note (2006).

When Rule 37 was amended in 2006 to specifically address the alteration

and deletion of ESI, a court could not impose sanctions on a party "for

failing to provide electronically stored information lost a result of the

routine, good-faith operation of an electronic information system." Fed. R.

Civ. P. 37 advisory committee's note (2015). The rule applied only to

information lost due to the "routine operation of an electronic information

system," which "includes the alteration and overwriting of information, often

without the operator's specific direction or awareness, a feature with no

direct counterpart in hard-copy documents," features "essential to the

operation of electronic information systems." Fed. R. Civ. P. 37 advisory

committee's note (2006).[2]

In this case, there is no dispute that the surveillance video recordings

were taken through and stored on the ACSO's Endura camera system.

(ECF No. 52-4 ¶ 9 ("Barringer Aff.").) The system automatically overwrites

---

[2] Present Rule 37(e) addressing the failure to preserve ESI was originally adopted as Rule 37(f). *See* Fed. R. Civ. P. 37(f) (2006). Subdivision (f) was then shifted to subdivision (e)—which was abrogated (but not removed) in 1980—in 2007.

the recordings after 30 days. (*Id.*; ECF No. 50, Ex. H.) Thus, a recording is

not saved beyond 30 days unless a copy of the recording is burned to a

disc. (Barringer Aff. ¶¶ 4, 6, 9; ECF No. 50, Ex. H.) Thus, the video

recordings (which presumably are digital) constitute ESI. *See Storey v.

Effingham Cty.*, No. CV415-149, 2017 WL 2623775, at *3 (S.D. Ga. June

16, 2017) (noting there was no debate that the county jail's surveillance

and taser videos were ESI); *Jenkins v. Woody*, No. 3:15cv355, 2017 WL

362475, at *14, 17 (E.D. Va. Jan. 21, 2017) (finding that video data, which

was saved on the jail's server and then overwritten, constituted ESI). Rule

37(e) therefore forecloses reliance on inherent authority to impose

sanctions for spoliation.[3]

---

[3] Even assuming the video recordings do not constitute ESI, Plaintiff's motion is nonetheless due to be denied. Spoliation for non-ESI "is established where the moving party demonstrates (1) the missing or destroyed evidence existed at one time, (2) the non-moving, allegedly spoliating party had a duty preserve the evidence, and (3) the allegedly spoliated evidence was crucial to the movant's ability to prove a prima facie case or defense." *Miles v. United States*, No. 3:14cv360-MCR/CJK, 2016 WL 3556845, at *2 (N.D. Fla. Mar. 30, 2016) (quoting *QBE Ins. Corp. v. Jorda Enters., Inc.*, 280 F.R.D. 694, 696 (S.D. Fla. 2012)). In considering whether the allegedly spoliating party had a duty to preserve the evidence, the party must have control over the evidence, have an obligation to preserve the evidence at the time it was destroyed, and be on notice of a claim or potential claim at the time the evidence was destructed. *Watson v. Edelen*, 76 F. Supp. 3d 1332, 1343 (N.D. Fla. 2015) (citing *Jandreau v. Nicholson*, 492 F.3d 1372, 1375 (Fed. Cir. 2007).

"Even if all three elements are met, '[a] party's failure to preserve evidence rises to the level of sanctionable spoliation only where the absences of that evidence is predicated on bad faith, such as where a party purposely loses or destroys relevant evidence.'" *Managed Care Solutions, Inc. v. Essent Healthcare, Inc.*, 736 F. Supp. 2d

Instead, Rule 37(e) requires the Court to conduct the following step-

by-step analysis. *See Ala. Aircraft Indus., Inc. v. Boeing Co.*, 319 F.R.D.

730, 740–46 (N.D. Ala. 2017); *Living Color Enters., Inc. v. New Era*

*Aquaculture, Ltd.*, No. 14-cv-62216-MARRA/MATTHEWMAN, 2016 WL

1105297, at *4–6 (S.D. Fla. Mar. 22, 2016); Ronald J. Hedges et al.,

*Managing Discovery of Electronic Information* 44–45 (3d ed. 2017). First,

was there was a duty to preserve the data in issue. *Id.* If so, were

reasonable steps taken to avoid the loss of the data. *Id.* If not, can the lost

data can be restored or replaced through additional discovery. *Id.* If not,

---

1317, 1322 (S.D. Fla. 2010) (quoting *Walter v. Carnival Corp.*, No. 09–20962–CIV, 2010 WL 2927962, at *2 (S.D. Fla. July 23, 2010)). If direct evidence of bad faith is unavailable, the moving party may use circumstantial evidence to establish bad faith. *Id.* Circumstantial evidence of bad faith requires the following:

> (1) evidence once existed that could fairly be supposed to have been material to the proof or defense of a claim at issue in the case; (2) the spoliating party engaged in an affirmative act causing the evidence to be lost; (3) the spoliating party did so while it knew or should have known of its duty to preserve the evidence; and (4) the affirmative act causing the loss cannot be credibly explained as not involving bad faith by the reason proffered by the spoliator.

*Id.* at 1323 (quoting *Walter*, 2010 WL 2927962, at *2).

Assuming, *arguendo*, that the video recordings were not ESI (which of course they were), Plaintiff has failed to demonstrate that spoliation occurred. First, as discussed *infra*, Plaintiff fails to establish that video footage ever existed showing "prolonged choking" by Defendant Barringer or Defendant Barringer falling (other than what is depicted in the produced videos). Second, Plaintiff has failed to establish that Defendant Barringer had a duty to preserve any of the video footage Plaintiff seeks. And third, as discussed *infra*, Plaintiff has failed to demonstrate that the allegedly spoliated evidence was crucial to his ability to prove a prima facie case of excessive force. Furthermore, even if Plaintiff met all three elements—which he has not—there is no evidence that Defendant Barringer acted in bad faith.

was the other party prejudiced by the loss of the data. *Id.* If so, the Court may impose "measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). But, if data was lost "with the intent to deprive another party of the information's use in the litigation," the court may "presume that the lost information was unfavorable to the party," "instruct the jury that it may or must presume the information was unfavorable to the party," or "dismiss the action or enter a default judgement." Fed. R. Civ. P. 37(e)(2).

Before conducting this analysis, however, the Court must first determine whether the alleged evidence ever existed. Obviously, if the information never existed there can be no claim for spoliation. Plaintiff alleges the following video footage is missing: (1) video footage from the pod showing the "prolonged choking of Plaintiff by Defendant Barringer"; (2) video footage from the pod showing Defendant Barringer falling down during the use-of-force incident; (3) video footage from the pod showing other inmates cleaning up the blood from Plaintiff's wounds after the incident; (4) video footage from the hallways on the route Defendant Barringer and Plaintiff took to medical after the incident; and (5) video footage from medical during Plaintiff's post-use-of-force examination. The

Court will address in turn whether there is evidence that any of this video footage is missing.

With regard to the video footage from the pod Plaintiff says would show the "prolonged choking of Plaintiff by Defendant Barringer" the Court has carefully reviewed the three videos Defendant Barringer filed with the Court—which were also previously provided to Plaintiff. The three videos were taken from three separate cameras: (1) the entryway to Pod 3 ("Pod Entry Video"); (2) inside Pod 3 looking towards the telephone ("First Pod Video"); and (3) inside Pod 3 looking towards the entryway ("Second Pod Video"). (ECF Nos. 52-1, 53.) The videos reveal the following.

The Pod Entry Video begins at 11:36:15 and shows Defendant Barringer leaving the entryway and entering Pod 3 at 11:39:07. The Pod Entry Video then ends at 11:39:39.

The First Pod Video begins at 11:37:39. Defendant Barringer comes into view at 11:39:11, at which time Plaintiff is on the opposite side of the pod on the telephone. The First Pod Video shows Defendant Barringer approach Plaintiff on the phone and then begin escorting Plaintiff back towards the entryway. Defendant Barringer and Plaintiff then briefly leave view at 11:39:28, and return into view at 11:39:30, at which time Defendant

Barringer begins falling to the ground. At 11:39:35 another officer enters frame, they secure Plaintiff, pick Plaintiff up at 11:40:12, begin escorting Plaintiff out of the pod through the entryway, and leave view at 11:40:16. The First Pod Video ends at 11:40:30. There are no time lapses or breaks in footage in the First Pod Video.

The Second Pod Video begins at 11:39:07 and shows Defendant Barringer entering the pod at 11:39:08. The Second Pod Video captures the entire incident between Defendant Barringer and Plaintiff in Pod 3, including Defendant Barringer and the other officer securing Plaintiff, picking Plaintiff up, and escorting Plaintiff out of the pod. Defendant Barringer and Plaintiff leave view at 11:40:18. The Second Pod Video ends at 11:40:29. There are no time lapses or breaks in footage in the Second Pod Video.

Although Plaintiff says the videos have been altered, there is absolutely no evidence suggesting that the videos were altered or are otherwise missing segments of footage during the use-of-force incident. Plaintiff's assertion that the videos originally showed prolonged choking (which he claims is no longer present in the videos) has no evidentiary

support.[4] Plaintiff offers nothing but his own unsupported version of events to support his claim that the videos were altered to remove footage showing prolonged choking. Accordingly, Plaintiff has failed to demonstrate that other evidence ever existed showing what Plaintiff refers to as "prolonged choking."

Second, with respect to Plaintiff's claim that footage showing Defendant Barringer falling to the ground was removed from the recordings, both the First Pod Video and the Second Pod Video show Defendant Barringer falling to the ground. Although the First Pod Video only shows part of the incident, the Second Pod Video shows the entire incident, including Defendant Barringer falling to the ground. Nonetheless, to the extent Plaintiff argues that the First Pod Video was altered to omit part of the incident, it is clear from the Court's review of the evidence that the First Pod Video only shows part of the incident because the position of the camera only covered part of the area leading to the entryway. Plaintiff has failed to prove that other evidence from the First Pod Video existed

---

[4] Plaintiff claims the alleged choking occurred before Defendant Barringer and the other officer secured Plaintiff, yet the video lacks any evidence of alteration during the altercation and ends with Defendant Barringer and the other officer escorting Plaintiff (who is secured in handcuffs) out of the Pod.

showing more of Defendant Barringer's fall.

On the other hand, it is feasible to believe that video footage existed (at one point) showing other inmates cleaning up blood on the pod floor after the incident. While the Court's review of the evidence fails to reveal any visible blood on the floor after the altercation, it is possible that small droplets of blood on the floor may not be visible via the video recordings. Although Plaintiff fails to suggest how he came to know that other inmates cleaned up blood from his wounds after the incident,[5] the Court will assume for the sake of the instant motion that footage previously existed showing other inmates cleaning the floor where Plaintiff fell after the incident.

Similarly, Defendant Barringer admits that there were operational cameras in the hallways through which he escorted Plaintiff to medical and in medical. Presumably then, those cameras would have shown—at least to some extent—footage of Plaintiff on the way to medical and while at medical.

---

[5] Plaintiff admits he was immediately escorted to medical and spent the night in the infirmary. Thus, Plaintiff was not present during the time in which other inmates allegedly cleaned up his blood. The Court notes, however, that the video recordings show another inmate mopping the floor of the Pod near the entryway where the altercation occurred.

Because Plaintiff has failed to prove that video evidence ever existed showing the "prolonged choking" of Plaintiff, or of Defendant Barringer falling to the ground (other than the footage included in the three videos), the Court need not apply the Rule 37(e) analysis. Instead, the Court's Rule 37(e) analysis will focus on the videos of Plaintiff being escorted to medical, of Plaintiff at medical, and of other inmates cleaning the floor in the pod after the use-of-force incident to determine whether spoliation occurred.

## A.    Was there a duty to preserve the data?

Under the first step of the Rule 37(e) analysis, the Court must determine whether Defendant Barringer had a duty to preserve the following evidence: (1) video footage from the pod showing other inmates cleaning up blood from Plaintiff's wounds after the incident; (2) video footage from the hallways on the route Defendant Barringer and Plaintiff took to medical after the incident; and/or (3) video footage from medical during Plaintiff's post-use-of-force examination. If the Court finds Defendant Barringer did not have a duty to preserve the evidence, the analysis ends. *See* Fed. R. Civ. P. 37(e) advisory committee's note (2015) (Rule 37(e) does not apply when information is lost before a duty to

preserve arises).

"The duty to preserve relevant evidence must be viewed from the perspective of the party with control of the evidence and is triggered not only when litigation is pending but also when it is reasonably foreseeable to that party." *Boeing*, 319 F.R.D. at 740 (citing *Graff v. Baja Marine Corp.*, 310 F. App'x 298, 301 (11th Cir. 2009); *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)). Only parties with possession, custody, or control over the evidence may be sanctioned for their failure to preserve the evidence. *Davison v. Nicolou*, No. CV616-039, 2017 WL 3726712, *3 n.3 (S.D. Ga. Aug. 29, 2017)).

A party may be in control of evidence that it does not own or physically possess. *Selectica, Inc. v. Novatus, Inc.*, No. 6:13-cv-1708-Orl-40TBS, 2015 WL 1125051, at *4 (M.D. Fla. Mar. 12 2015). For example, a party may be in control of evidence where the party has the legal right, authority, or practical ability to obtain the materials upon demand. *Id.* (citing *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 530 (S.D.N.Y. 1996)). Under the practical ability test, a party might control a non-party based on their relationship, such as where there is a contract empowering the party to obtain information from the non-party or where it

is customary in the industry for the non-party to furnish the information to the party. *Id.* For example, an employer may possess power over an employee to obtain data from the employee. *Id.* at *5 (citing *Bleecker v. Standard Fire Ins. Co.*, 130 F. Supp. 2d 726, 739 (E.D.N.C. 2000)).

Defendant Barringer did not have a duty to preserve the evidence at issue. There is no question that Defendant Barringer never physically possessed or owned the video evidence at issue. The question, therefore, is whether Defendant Barringer nonetheless had control over the evidence.

For the following reasons the Court concludes that Defendant Barringer had no control over the video recordings at issue. Defendant Barringer is employed by the ACSO as a correctional officer at the ACJ. (Barringer Aff. ¶ 2.) Sergeants are the only officers that have access to the Endura camera system in the ACJ and the videos taken by the camera system. *(Id.* ¶ 6.)* Defendant Barringer has no authority over or control of the Endura camera system or the preservation of video recordings. (*Id.*) Sergeants, however, usually save copies of use-of-force incidents to discs. (*Id.* ¶¶ 4, 6.) Defendant Barringer was not aware that a sergeant had in fact preserved the videos (which were produced to Plaintiff and the Court) until his supervising sergeant gave him a copy of the videos in preparation for

Defendant Barringer's first attorney-client meeting after he was served in this case. (*Id.* ¶¶ 3–4.)

Nothing suggests that Defendant Barringer had the practical ability to obtain copies of video recordings on request. Defendant Barringer was an employee of the ACSO and worked at the ACJ. He had nothing to do with the videos or the camera system. Notably, Defendant Barringer did not obtain a copy of the videos himself; instead, a sergeant gave Defendant Barringer a copy of the videos.

Furthermore, neither the ACSO nor Sheriff Darnell are parties to this lawsuit. *See Storey*, 2017 WL 2623775, at *3 (following officer's tasing of a county jail inmate, county defendants, including the County Board of Commissioners, the County, the Sheriff, and the county jail Captain, who arguably had control over video evidence from the jail and the video retention policy, had a duty to preserve video evidence of the tasing); *Arkin v. Gracey-Danna, Inc.*, No. 8:16-cv-1717-T-35AAS, 2016 WL 3959611, at *2 (M.D. Fla. July 22, 2016) (non-party had no duty to preserve evidence absent a court order). Plaintiff specifically sued Defendant Barringer in his individual capacity—not his official capacity. Although Plaintiff argues that Defendant Barringer had control over the videos because he was an

employee of the ACSO and was engaged in the performance of his duties at the time of the incident, Plaintiff points to no authority to support this proposition. While employer-employee relationships may render control over data, those instances are applicable only where a non-party employee possesses the data, not a non-party employer. *See Storey*, 2017 WL 2623775, at *3 (individual officers had no control over jail's surveillance videos and therefore had no duty to preserve the video evidence). Defendant Barringer had no duty to preserve the video recordings because he had no control over the video recordings. Accordingly, there was no spoliation in this case and Plaintiff is therefore not entitled to spoliation sanctions.

Alternatively, even assuming Defendant Barringer had control over the video recordings—which he did not—he did not have a duty to preserve the three pieces of video evidence in question. In the Eleventh Circuit, a party has a duty to preserve all potentially relevant evidence within its control when litigation is pending or reasonably foreseeable. *Boeing*, 319 F.R.D. at 740 (citing *Graff*, 310 F. App'x at 301)). There is no dispute that the ACJ's videos are automatically overwritten after 30 days. Thus, unless a sergeant burns a use-of-force video to a disk within 30 days

after the incident, the videos are no longer available.

The critical videos were saved in this case, that is, the videos that show the interactions between Plaintiff and Defendant Barringer leading up to the use-of-force and the actual use-of-force. Plaintiff admits that no further use-of-force occurred once he was secured in the pod. There was therefore no reason to also save videos of Plaintiff being escorted to medical, while at medical, and of other inmates cleaning the floor after the use-of-force incident.

Moreover, nothing suggests that litigation was reasonably foreseeable to Defendant Barringer within the 30 day period following the incident after which the videos were automatically overwritten. Defendant Barringer says he was unaware of any potential litigation by Plaintiff against him regarding the use-of-force on February 11, 2016, until he was served on March 3, 2017—more than a year later. (Barringer Aff. ¶ 3.) Although Plaintiff filed an informal grievance the day after the incident, that grievance mentioned nothing about camera videos, Plaintiff's escort to medical, Plaintiff's examination at medical, or videos of other inmates cleaning the pod floor after the incident. Furthermore, there is no suggestion that Defendant Barringer was even aware of the informal

grievance.

Similarly, although Plaintiff requested permission to review the pod cameras in his March 5, 2016, formal grievance Plaintiff made no mention of the hallway cameras, the cameras in medical, or specifically of other inmates cleaning up his blood after the incident. Like his informal grievance, there is no suggestion that Defendant Barringer was aware that Plaintiff filed the formal grievance. Plaintiff's next filing was not until April 12, 2016—after the 30-day video preservation ended. Thus, even assuming Defendant Barringer had control over the videos, Defendant Barringer had no duty to preserve the videos because litigation was not reasonably foreseeable while the videos existed.

**B.    Were reasonable steps taken to avoid the loss?**

Assuming, *arguendo*, that Defendant Barringer had a duty to preserve the three videos, the record is silent as to why the three videos at issue were not saved. The videos depicting the actual use-of-force were saved, however, within the 30-day period before automatic overwrite. This suggests that the other three videos could have also been preserved.

**C.    Can the lost data can be restored or replaced through additional discovery?**

Assuming Defendant Barringer had a duty to preserve the three videos and failed to take reasonable steps to preserve the videos—which is not the case—the record discloses that the three videos cannot be restored or replaced through additional discovery. After 30 days the videos are overwritten and not saved unless a sergeant burns a copy to a disk. It is undisputed that these videos were not saved. Nor is there any suggestion that another surveillance system exists within the ACJ which would have captured the same footage.

**D.    Was the other party prejudiced by the loss of the data?**

Finally, even if the Rule 37(e) analysis proceeded to this final step, the Court does not find Plaintiff was prejudiced by the loss of the data. Plaintiff claims that these videos were crucial to show his injuries, Defendant Barringer's demeanor after the use-of-force, and the disparity in sizes between Plaintiff and Defendant Barringer. But, Plaintiff also admits that this video evidence would allow him to "more effectively prove his case against Defendant Barringer." (ECF No. 50 at 16–17.) Indeed, the lack of this evidence does not preclude Plaintiff from succeeding on his claims.

For example, Plaintiff's medical records can be used to evidence any injuries sustained in the incident. (ECF No. 52-2.) And while Plaintiff claims that not all of his injuries were documented, Plaintiff can nonetheless provide testimony as to his injuries. Furthermore, there is no way to know whether Plaintiff's injuries were visible from the cameras in the hallways and medical.

To the extent Plaintiff wants the hallway and medical footage to show Defendant Barringer's demeanor after the use-of-force, Plaintiff admits that no further use-of-force incidents occurred after he was secured in the pod. Thus, it is unclear how Defendant Barringer's demeanor after the incident is even relevant, much less crucial, to Plaintiff's claims.

Although Plaintiff wants the video of the other inmates allegedly cleaning the floor after the incident, the videos that have been produced do in fact depict the floor immediately after the incident. It is unclear how footage of an inmate mopping up the floor would aid Plaintiff in any manner. Notably, there does not appear to be any blood on the floor following the incident from the Court's review of the videos. And even if the inmates did mop the area afterwards, they could have been mopping up sweat or saliva from where Plaintiff's head was on the floor, or simply have

been proceeding with cleaning the entire floor of the pod.[6]

Additionally, all three produced videos clearly show both Defendant

Barringer and Plaintiff, and therefore, the size disparity between them.

Defendant Barringer also admitted in his responses to Plaintiff's request for

admission that he was 6 feet, two inches tall and weighs 220 pounds.

Thus, other video evidence showing the disparity in sizes is not necessary.

Finally—and most importantly— nothing suggests that the videos

were lost with the intent to deprive Plaintiff of use of the videos in this case.

*See* Fed. R. Civ. P. 37(e)(2). "Subdivision (e)(2) requires a finding that the

party acted with the intent to deprive another party of the information's use

in the litigation." Fed. R. Civ. P. 37 advisory committee's note (2015).

In this case, it is undisputed that the ACJ's video system

automatically overwrites video recordings after 30 days. Defendant

Barringer also attests that he did not manipulate, tamper, or intentionally

destroy the video recordings. (Barringer Aff. ¶ 7.) There is simply no

evidence—directly or circumstantially— that Defendant Barringer engaged

in an affirmative act to destroy the videos. *Cf. Boeing*, 319 F.R.D. at 746

---

[6] The videos depict another inmate with a mop and a water bucket mopping the floor of the pod by the entryway where the use-of-force occurred.

*Case No. 1:16-cv-378-WTH-GRJ*

(finding that defendant intended to deprive plaintiff of ESI where despite being directed to remove ESI from employees' computers and send the ESI to the legal department, defendants permanently deleted the ESI from one employee's computer).

Plaintiff argues Defendant Barringer acted in bad faith by not taking affirmative actions to preserve the evidence. While failing to take affirmative actions to preserve evidence might at most constitute negligence, negligence is not sufficient to establish that Defendant Barringer acted with the intent to deprive Plaintiff of the evidence. *See Living Color*, 2016 WL 1105297, at *6 (court declined to find an intent to deprive merely because defendant failed to negate the auto-delete feature of his cell phone); *Marshall v. Dentfirst*, 313 F.R.D. 691, 701 (N.D. Ga. 2016) (no intent to deprive where computer records were wiped during a company-wide upgrade). Accordingly, even if spoliation occurred in this case—which it did not—Plaintiff would not be entitled to spoliation sanctions.

## IV. CONCLUSION

Upon due consideration, it is **ORDERED**:

Plaintiff's Motion for Spoliation Sanctions, ECF No. 50, is **DENIED**.

**DONE AND ORDERED** this 6th day of November 2017.


*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge